UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
HOPE PAGANO,

       Appellant,

 -against-

MARC A. PERGAMENT, Chapter 7 Trustee
of the Estate of Marc B. Tolkin,

       Appellee.
---------------------------------------------------------X

**ORDER**
11-CV-2630 (SJF)

FEUERSTEIN, District Judge:

 Appellant Hope Pagano ("Pagano" or "Appellant") has filed a notice of appeal from the memorandum decision of the United States Bankruptcy Court for the Eastern District of New York (Grossman, U.S.B.J.), dated April 5, 2011, finding that the Trustee was entitled to recover from Pagano the sum of nine thousand dollars ($9,000.00), plus interest. For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

I. Background

 A. Appellant's Loan to Marc Tolkin

 On October 1, 2007, Appellant and her husband, Steven Pagano, loaned Marc B. Tolkin (the "Debtor") the sum of one hundred fifty thousand dollars ($150,000.00). Memorandum Decision dated April 5, 2011 [Docket Entry No. 1-11] ("Mem. Dec.") at 5-6. Appellant has testified that she and her husband raised the money for the loan by borrowing from their home

1

equity line of credit account with Chase Bank ("Chase Account"). Id. at 6. The Debtor executed a balloon note (the "Note") requiring him to repay the principal and accrued interest on the Note on or before December 1, 2007. Id.

B. Marc Tolkin Bankruptcy Proceedings

On May 19, 2008, the Debtor filed a petition pursuant to Chapter 13 of the United States Bankruptcy Code.[1] Id. at 3. On June 26, 2008, the case was converted into one under Chapter 11 of the Bankruptcy Code, and on December 10, 2008, the case was converted into one under Chapter 7 of the Bankruptcy Code. Id. Marc A. Pergament (the "Trustee") was appointed trustee of the bankruptcy estate on December 10, 2008. Id. Pagano was not listed as a creditor in the schedules filed in this case. Id. at 6.

On July 31, 2009, the Trustee commenced an adversary proceeding against Pagano and the Debtor's father, Ron Tolkin. Id. at 3. In the complaint, the Trustee claimed that, after the Debtor filed his petition on May 19, 2008, he sold the forty percent (40%) interest he owned in an entity named the Alnic Restaurant Group ("Alnic") to a third party for the sum of one hundred forty thousand dollars ($140,000.00). Id.; Complaint [Docket Entry No. 1-8] at ¶¶ 10-11. According to the Trustee, the Debtor conducted this transaction without the approval of the Bankruptcy Court and then transferred the proceeds of the sale to Pagano and Ron Tolkin. Docket Entry No. 1-8 at ¶¶ 11, 13. The Trustee alleged that the proceeds from the Debtor's sale of his interest in Alnic constituted property of the Chapter 7 bankruptcy estate. Id. at ¶ 12. The

---

[1] The Debtor first filed a petition for relief under Chapter 13 on October 15, 2007, which was dismissed on March 17, 2008. Mem. Dec. at 3.

Trustee's complaint sought judgment pursuant to 11 U.S.C. § 549(a) avoiding the transfers, as well as judgment pursuant to 11 U.S.C. § 550(a)(1) against Pagano and Ron Tolkin for the sum of seventy thousand dollars ($70,000.00) each, plus interest from October 1, 2008. Id. at ¶¶ 18-26.[2]

The Trustee subsequently moved for summary judgment with respect to the claims against Pagano. Appellant's Amended Appendix [Docket Entry No. 13-2] ("Pl. Appx.") at 167. On or about September 27, 2010, in connection with summary judgment briefing, the Trustee increased the amount he sought to recover from Pagano to eighty-nine thousand sixty-four dollars and eighty-one cents ($89,064.81), citing his discovery of "additional monthly payments" that Debtor made to Pagano. Id. at 175.

The Bankruptcy Court denied the Trustee's motion for summary judgment, finding that there were disputed issues of fact as to the source of the funds transferred to Appellant. Mem. Dec. at 4. A trial was held on December 7, 2010. Id. at 4-5.


C.   The Bankruptcy Court's Decision

On April 5, 2011, the Bankruptcy Court issued a memorandum decision finding that the Trustee was entitled to judgment in the total amount of nine thousand dollars ($9,000.00), plus interest from the date the adversary proceeding was commenced. Id. at 3.

The Bankruptcy Court found that after Debtor filed the second bankruptcy petition May 19, 2008, he made a series of deposits into Appellant's Chase Account, totaling sixty-eight

---

[2] Although the Trustee reached a settlement with Ron Tolkin, default judgment was entered against him after he failed to make scheduled payments. Mem. Dec. at 4.

thousand six hundred and six dollars ($68,606.00). Id. at 1-3, 7, 11. Specifically, the Bankruptcy Court found that the Debtor: transferred four thousand nine hundred dollars ($4,900.00) to Appellant's Chase Account prior to May 19, 2008 (*i.e.*, the date on which the Debtor filed his Chapter 13 petition); transferred five thousand dollars ($5,000.00) to the Chase Account during the Chapter 13 phase of the case; transferred fifty-four thousand dollars ($54,000.00) to the Chase Account during the Chapter 11 phase of the case; and transferred nine thousand six hundred and six dollars ($9,606.00) to the Chase Account during the Chapter 7 phase of the case. Id. at 7.

The Bankruptcy Court noted that "what constitutes property of the Debtor's estate changes under each Chapter of the Bankruptcy Code," and separately analyzed the transfers made during each phase of the bankruptcy proceeding. The Bankruptcy Court ultimately found that: (1) the Trustee was entitled to recover the five thousand dollar ($5,000.00) transfer made while the Debtor was proceeding under Chapter 13; (2) the Trustee was entitled to recover four thousand dollars ($4,000.00) of the fifty-four thousand dollar ($54,000.00) transfer made while the Debtor was proceeding under Chapter 11[3]; and (3) the Trustee was not entitled to recover any of the transfers made while the Debtor was proceeding under Chapter 7. Mem. Dec. at 2-3.

This appeal followed.

---

[3] The Court found that all or part of a fifty thousand dollar ($50,000.00) transfer was derived from a bank account the Debtor maintained for another business entity, Tolkin Foods, Inc., rather than from the Debtor's sale of Alnic. Mem. Dec. at 8-9.

II. Discussion

  A. Standard of Review

This Court has jurisdiction to hear appeals from judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a). On an appeal from a bankruptcy court decision, a district court must review findings of fact under a "clearly erroneous" standard, with "due regard . . . given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. "A lower court's choice between two permissible views of the facts cannot be held to be clearly erroneous." In re Kollel Mateh Efraim, LLC, 456 B.R. 185, 191 (S.D.N.Y. 2011) (quoting In re Commodore Bus. Mach., 246 B.R. 476, 487 (S.D.N.Y. 2000)). "[T]he burden of demonstrating that the Bankruptcy Court's findings of fact are clearly erroneous rests squarely on the shoulder of the appellant.'" Id. (quoting In re Ciena Capital, 440 B.R. 47, 52 (S.D.N.Y. 2010)). Issues of law, however, as well as "mixed questions of law and fact," are reviewed de novo. In re Vouzianas, 259 F.3d 103, 107 (2d Cir. 2001); In re Hirsch, 339 B.R. 18, 24 (E.D.N.Y. 2006). "[T]he district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013; see also In re Moreo, 437 B.R. 40, 50 (E.D.N.Y. 2010).

  B. Analysis

Appellant challenges the Bankruptcy Court's decision on the following grounds: (1) that the Trustee has failed to prove that any funds deposited into her Chase Account were property of the Debtor's estate, see Appellant's Amended Brief ("Br.") [Docket Entry No. 8] at 14; (2) that a

five thousand dollar ($5,000.00) transfer on June 12, 2008 and a one thousand dollar ($1,000.00) transfer on September 13, 2008 were "made outside of the time allotted the Trustee pursuant to and [sic] 550(f)," id. at 14-15; and (3) that the evidence did not establish that a two thousand dollar ($2,000.00) transfer on October 14, 2008 and a one thousand dollar ($1,000.00) transfer on November 15, 2008 originated from Debtor's estate, see id. at 15.

1.   The Debtor's Transfers as "Property of the Estate"

"11 U.S.C. § 549(a), in pertinent part, vests in a trustee the power to 'avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and . . . (2)(B) that is not authorized under this title or by the court.'" In re Westchester Tank Fabricators, Ltd., 207 B.R. 391, 396 (Bankr. E.D.N.Y. 1997) (quoting 11 U.S.C. § 549(a)). "As the party seeking to set aside the Postpetition Transfers, the Trustee bears the burden of proof." Id. (citing cases). "[T]o the extent that a transfer is avoided under section . . . 549 . . . the trustee may recover, for the benefit of the estate, the property transferred . . . ." 11 U.S.C. § 550(a).

Neither party disputes the finding that Appellant "was the transferee of property in the form of deposits into the Chase Account . . . in the aggregate amount of $68,606.00." See Mem. Dec. at 11. Rather, Appellant challenges the Bankruptcy Court's finding that the sum of nine thousand dollars ($9,000.00) transferred constituted "property of the estate" under Section 549. See Br. at 14.

a.   Debtor's Chapter 13 Proceeding

11 U.S.C. § 541(a)(1) defines "property of the estate" as "all legal or equitable interests of

the debtor in property as of the commencement of the case." As the Bankruptcy Court noted, however, "what constitutes property of the Debtor's estate changes under each Chapter of the Bankruptcy Code." Mem. Dec. at 1.

In a Chapter 13 case, "property of the estate" includes, in addition to the property specified in 11 U.S.C. § 541(a)(1):

> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). Thus, this definition also includes assets acquired *after* a petition is filed under Chapter 13.

On or about June 12, 2008, while Debtor's case was proceeding under Chapter 13, he made a single transfer of five thousand dollars ($5,000.00) to Appellant's Chase Account. The Bankruptcy Court found that these funds consisted of "post-petition earnings" *or* "property in the Debtor's possession as of the Second Petition Date." Mem. Dec. at 16. Thus, at the time of transfer, these funds constituted "property of the estate" under the definitions contained in either Section 541 or Section 1306.

However, approximately two (2) weeks after this transfer, on June 26, 2008, the case was converted from one under Chapter 13 to one under Chapter 11. Mem. Dec. at 3. As a result, the scope of the definition changed once again. Pursuant to 11 U.S.C. § 348(f)(1)(A), "property of the estate" in such a converted case "consist[s] of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of

7

conversion . . . ." Thus, "in most cases, the property that came into the estate only because of section 1306(a) is not included in the estate in the converted case." In re Bostick, 400 B.R. 348, 358 n. 8 (Bankr. D. Conn. 2009) (quoting 8 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1306.04, at 1306-8 (15 ed. rev. 2006)); see also Stamm v. Morton (In re Stamm), 222 F.3d 216, 218 (5th Cir. 2000) ("Section 348(f)(1)(A) establishes that property acquired after the Chapter 13 filing . . . is not part of the converted estate.").

A plain reading of Section 348(f)(1)(A) requires that the five thousand dollars ($5,000.00) transferred becomes excluded from the "property of the estate" because: (1) these funds may have been "post-petition earnings," and therefore not property of the estate "as of the date of filing of the petition," and (2) these funds no longer "remain[ed] in the possession of or [] under the control of the debtor on the date of conversion." See Mem. Dec. at 13. Under this interpretation, there would be no adverse consequences for Debtor's impermissible transfer of funds that were, at the time, part of his Chapter 13 estate. The Bankruptcy Court declined to apply this provision literally; it noted that Debtor had "ma[de] undisclosed transfers to undisclosed prepetition creditors outside of the plan process," and found that the funds transferred were avoidable under Section 549. Mem. Dec. at 16.

"Courts have struggled in applying § 348(f)(1)(A)." In re Salazar, 465 B.R. 875, 878 (9th Cir. BAP 2012). As this Court and others have recognized, there are situations in which a literal interpretation and application of Section 348(f)(1)(A) leads to unreasonable or absurd results. As one bankruptcy court stated, "§ 348(f) was never designed to be a safe harbor for debtors who fraudulently and surreptitiously dispose of property of the estate while in chapter 13." In re Fobber, 256 B.R. 268, 279 (Bankr. E.D. Tenn. 2000). This Court agreed with that general view

8

in In re Pisculli, 426 B.R. 52 (E.D.N.Y. 2010), which rejected an interpretation of the statute that would "allow[] a debtor to hinder his creditors during a Chapter 13 proceeding by transferring or otherwise disposing of assets prior to conversion without any consequence." Id. at 65 ("Where, as here, a debtor actively transfers or disposes of property that would otherwise have been available to creditors during the Chapter 13 case, the debtor should not be allowed to escape the consequence of a denial of discharge simply because the proceeding has been converted to a Chapter 7 case.").

In interpreting the Bankruptcy Code, courts must "not be guided by a single sentence or [part] of a sentence, but look to the provisions of the whole law, and to its object and policy." In re Boodrow, 126 F.3d 43, 49 (2d Cir. 1997) (quoting Kelly v. Robinson, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986)). Although, in interpreting a statute, courts will "first look to the language of the statute itself," Greenery Rehab. Group, Inc. v. Hammon, 150 F.3d 226, 231 (2d Cir. 1998), courts will also look beyond the plain language in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (citation omitted), and in those cases in which that interpretation "would produce absurd results," see Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982); see also In re Standiferd, Nos. 7-00-16958 MA, 07-1076, 2008 WL 5273690, at *7 (Bankr. D.N.M. Dec. 17, 2008). "[E]ven when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words." United States v. American Trucking Ass'ns, 310 U.S. 534, 543, 60 S.Ct.

1059, 1063, 84 L.Ed. 1345 (1940) (quoting Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199 (1922)).

As this Court noted in Pisculli, in enacting Section 348(f), Congress intended to equalize the treatment of a debtor in a Chapter 13 case that is subsequently converted to a Chapter 7 case with the treatment of a debtor who filed a Chapter 7 petition originally, see Bostick, 400 B.R. at 359 (citing In re Pearson, 214 B.R. 156, 164 (Bankr. N.D. Ohio 1997)), thereby removing any disincentive toward voluntary repayment plans under Chapter 13 and incentive in favor of liquidation under Chapter 7. See Bostick, 400 B.R. at 357 (noting "Bankruptcy Code's goal to encourage repayment plans instead of liquidation"); In re Standiferd, 2008 WL 5273690, at *7; In re LaFlamme, 397 B.R. 194, 201 (Bankr. D.N.H. 2008) (in enacting Section 348(f), "Congress was concerned that a contrary rule would greatly dissuade debtors and create a serious disincentive to chapter 13 filing because debtors would fear that property acquired after filing could be lost if the case were converted"); In re Fobber, 256 B.R. at 278 ("§ 348(f)(1)(A) was designed to mitigate the effect of § 1306(a) in cases converted from chapter 13 by excluding from property of the estate in the converted case property brought into the estate under § 1306(a)."). This is supported by the legislative history of Section 348(f), H.R. Rep. No. 103-835 (1994), 140 Cong. Rec. H10752-01 (Oct. 4, 1994), U.S. Cong. & Admin. News 1994, p. 3340, which expressly adopted the reasoning of the Third Circuit in In re Bobroff, 766 F.2d 797, 803 (3d Cir. 1985).[4] See, e.g., In re Standiferd, 2008 WL 5273690, at *7 n. 8; In re Fobber, 256 B.R.

---

[4] The legislative history states, in pertinent part:

"This amendment would clarify the [Bankruptcy] Code to resolve a split in the case of [sic] law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13

10

at 278 ("By adopting Bobroff in its enactment of § 348(f)(1)(A), Congress intended to avoid penalizing debtors for their chapter 13 efforts by placing them in the same economic position they would have occupied if they had filed chapter 7 originally.").

In LaFlamme, the bankruptcy court stated: "[A] debtor [should not] be given unlimited ability to dispose of chapter 13 estate property before a plan is confirmed or before the case is converted." 397 B.R. at 204. That court, however, found that a debtor has an "implicit right" to use chapter 13 estate property, provided such use is for lawful purposes, e.g., ordinary and necessary living expenses, and the later conversion to chapter 7 is not in bad faith or done with

---

(and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate does not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

This amendment overrules the holding in cases such as Matter of Lybrook, 951 F.2d 136 (7th Cir.1991) and adopts the reasoning of In re Bobroff, 766 F.2d 797 (3d Cir.1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case." 140 Cong. Rec. H10752–01, 1994 WL 545773 (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994, p. 3366.

11

the intent to hinder, defraud, or delay a creditor or trustee." Id. This Court agrees with this general approach, which also appears to have been adopted and applied by the Bankruptcy Court below.

In this case, the Debtor did not use the five thousand dollars ($5,000.00) at issue for ordinary or necessary expenses; instead, he transferred the funds to pay one (1) particular creditor. The transfer was made without the approval of the Bankruptcy Court. Approval of the Debtor's actions would essentially be granting "safe harbor for [a] debtor[] who fraudulently and surreptitiously dispose[d] of property of the estate while in chapter 13." See Fobber at 279. Such an approach would create an incentive for debtors to take similar actions in the future and "reward shenanigans by debtors in failing Chapter 13 cases." LaFlamme, 394 B.R. at 204 (quoting 4 Keith M. Lundlin, Chapter 13 Bankruptcy § 316.1, at 316-18 to -19 (3d ed. 2000 & Supp. 2004) (footnotes omitted)). The Court believes that this would be an absurd result that would undermine more basic and fundamental goals of the Bankruptcy Code.[5] Accordingly, the Bankruptcy Court's conclusion that the five thousand dollar ($5,000.00) transfer constituted property of the estate is affirmed.

b. Chapter 11 Proceeding

Pursuant to 11 U.S.C. § 1115, when the debtor proceeding under Chapter 11 is an individual, "property of the estate" also includes "all property of the kind specified in section 541 that the debtor acquires" and "earnings from services performed by the debtor" "after the

---

[5] The Court recognizes that at least one other court has arrived at different conclusions in interpreting this statute. See In re Salazar, 465 B.R. 875 (9th Cir. BAP 2012).

12

commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first." 11 U.S.C. § 1115(a). Although this section resembles 11 U.S.C. § 1306(a), there is no provision comparable to 11 U.S.C. § 348(f) in the Chapter 11 context. See In re Quillen, 408 B.R. 601, 620 n. 33 (Bankr. D. Md. 2009) ("Section 1115 . . . is identical to Section 1306. Curiously though, no counterpart to Section 348(f) was codified in BAPCPA to correspondingly adjust the reach of Section 1115.").

The Bankruptcy Court found that three (3) transfers to Pagano during the course of the Chapter 11 proceedings, the transfer of one thousand dollars ($1,000.00) on September 13, 2008, the transfer of two thousand dollars ($2,000.00) on October 14, 2008, and the transfer of one thousand dollars ($1,000.00) on November 15, 2008, constituted "property of the estate" under either Sections 541 or 1115(a). See Mem. Dec. at 20. Appellant has identified no error of fact or law in this conclusion. Accordingly, this aspect of the Bankruptcy Court's decision is also affirmed.[6]

### 2. Statute of Limitations

Next, Appellant argues that the five thousand dollar ($5,000.00) transfer on June 12, 2008 and one thousand dollar ($1,000.00) transfer on September 13, 2008 were "made outside of the time allotted the Trustee pursuant to and [sic] [11 U.S.C.] 550(f)." Br. at 14-15. Although it is not clear whether this argument was raised in the Bankruptcy Court, see In re Rauh, 119 F.3d 46, 51 (1st Cir. 1997) ("As the bankruptcy court was never afforded an opportunity to consider the

---

[6] The Bankruptcy Court also found that transfers made while the case was proceeding under Chapter 7 did not qualify as property of the estate. The Court does not revisit that finding because neither party has objected to it on appeal.

theory and authorities now advanced . . . we decline the invitation to do so on appeal."), the argument fails for the reasons discussed below.

11 U.S.C. § 549(a) provides, in pertinent part, that "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case; and . . . that is not authorized under this title or by the court." However, "[a]n action or proceeding under [Section 549] may not be commenced after the earlier of-- (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed." 11 U.S.C. § 549(d). To the extent that a transfer is avoided under Section 549, "the trustee may recover, for the benefit of the estate, the property transferred," but such an "action or proceeding [under Section 550] . . . may not be commenced after the earlier of-- (1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or (2) the time the case is closed or dismissed." 11 U.S.C. § 550(a), (f).

On or about July 29, 2009, the Trustee filed the complaint against Pagano, in which he sought to avoid and recover seventy thousand dollars ($70,000.00) in "Alnic Proceeds." Appellee's Appendix at Tr-App.A000030-35. However, Appellant argues that the Trustee "only first sought to [avoid the transfers at issue] on September 29, 2010." Appellant's Reply Brief ("Rep. Br.") [Docket Entry No. 14] at 4. This is the date on which the Trustee identified "additional monthly payments" to Pagano, which included the June 12, 2008 and September 13, 2008 transfers, and increased the amount he sought to avoid from seventy thousand dollars ($70,000.00) to eighty-nine thousand sixty-four dollars and eighty one cents ($89,064.81). Rep. Br. at 4; Plaintiff's Amended Appendix [Docket Entry No. 13-2] ("Pl. Appx.") at 175. The Trustee argues in response that his actions were timely because he "simultaneously sought: (1) to

14

avoid the disputed transfers and (2) recovery of the avoided transfers." Appellee's Brief [Docket Entry No. 9] at 13; see also Appellee's Appendix at Tr-App.A000030-35.

Assuming that Appellant's argument was properly raised before the Bankruptcy Court, and assuming that the two (2) relevant transfers are separate from the funds the Trustee originally sought in his complaint, these additional payments fall within the statute of limitations because they relate back to the date of the original complaint (*i.e.*, July 29, 2009). Federal Rule of Bankruptcy Procedure 7015 applies Federal Rule of Civil Procedure 15 to adversary proceedings under the Bankruptcy Code. Under Federal Rule of Civil Procedure 15(c)(1)(B), an "amendment to a pleading [may] relate[] back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]" That is the case here, as the additional transfers arise from the same basic facts and conduct as alleged in the Trustee's complaint. See generally In re Citron, No. 09-71442-ast, No. 09-08126-ast, 2010 WL 2978062, at *6 (Bankr. E.D.N.Y. July 23, 2010) (finding that Section 549's statute of limitations did not bar avoidance claims raised in motion for summary judgment).

3. Evidence Regarding Debtor's October 14, 2008 and November 15, 2008 Transfers

Appellant also appears to argue that there was insufficient evidence to support a finding that certain transfers originated from the property of Debtor's estate. See Br. at 15; Rep. Br. at 7-9. According to the Bankruptcy Court's decision, the Debtor testified that these funds "came from proceeds generated from the sale of his interest in the Alnic Group, LLC or from his income." Mem. Dec. at 20. Although the Bankruptcy Court did not determine whether the funds

15

originated from Debtor's sale of Alnic or Debtor's income, it concluded that the distinction was not relevant "[b]ecause both sources of funds would constitute property of the Debtor's estate under either Bankruptcy Code §§ 541 or 1115(a) . . . ." Id.

First, Appellant takes issue with "the bank statement submitted to the court," which she appears to argue is insufficient to establish that the two thousand dollar ($2,000.00) transfer on October 14, 2008 was part of the Debtor's estate. See Rep. Br. at 7. However, Appellant fails to identify any error by the Bankruptcy Court, which apparently relied upon the Debtor's testimony concerning the source of these funds. Mem. Dec. at 20. Appellant argues that the Debtor's credibility as a witness is "at the very least questionable," Rep. Br. at 7, but "[t]his Court gives deference to the Bankruptcy Court's 'factual determinations because of its expertise and superior position to make determinations of credibility.'" In re Kollel Mateh Efraim, 456 B.R. at 191 (quoting Pearl-Phil GMT Ltd. v. Caldor Corp., 266 B.R. 575, 580 (S.D.N.Y. 2001)). The Court sees no basis for upsetting the Bankruptcy Court's determination.

Second, Appellant argues that the transfer to her Chase account in the amount of one thousand dollars ($1,000.00) on November 15, 2008 "could not have come from the Estate as the bank statement . . . shows the Debtor was insolvent and his account was negative $4000 and change at that date." Br. at 8. Again, however, the Appellant fails to identify any error by the Bankruptcy Court, and this aspect of the decision is also affirmed.[7]

---

[7] The Court declines to consider Appellant's argument that the Trustee "failed [to] follow" Federal Rule of Bankruptcy Procedure 7026 because it was raised for the first time in her reply brief. See Business Funding Group v. Dommer Const. Corp., No. 11-CV-565S, 2012 WL 1029464, at *4 (W.D.N.Y. Mar. 16, 2012) (citing Ernst Haas Studio v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999)).

16

III. Conclusion

The Court has considered both parties' submissions in their entirety. For the foregoing reasons, the April 5, 2011 decision of the Bankruptcy Court is AFFIRMED.

**SO ORDERED.**

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated:   May 16, 2012
         Central Islip, New York